UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAYLA WHITEBREAD, | |
| Plaintiff, | CIVIL ACTION NO. 3:22-cv-00133 |
| v. | (SAPORITO, M.J.) |
| LUZERNE COUNTY, et al., | |
| Defendant. | |

## MEMORANDUM

This matter is before the court on the motion to dismiss (Doc. 9) filed by the defendant, Luzerne County and Luzerne County Correctional Facility (the "County defendants"). The plaintiff, Kayla Whitebread, filed this action against the County on January 25, 2022. In her complaint, the plaintiff brings federal claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and § 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794. (Doc. 1).

For the reasons set forth herein, the County defendants' motion to dismiss regarding the ADA and RA claims will be granted with leave to amend.

## I. *Statement of Facts*

The plaintiff's complaint (Doc. 1) filed on January 25, 2022, in this court, alleges that she became employed as a correctional officer with the defendants on October 26, 2020, and she was subject to a 120-day probationary period which would have ended on February 23, 2021. Whitebread alleges that on February 7, 2021, she called her employer to report that she was unable to work because she was experiencing COVID-19 symptoms, that her stepson had been exposed to COVID-19, and that she had been exposed to her stepson.

On February 8, 2021, Whitebread again called her employer stating she was unable to work because she had been tested for COVID-19, and she was awaiting the results of the test. The next day, at her employer's request, her physician faxed a note to Whitebread's employer stating that she should remain off work until she received the results of the COVID-19 test results. That same day, her employer called and asked her to work an overtime shift. She explained that she had been exposed to COVID-19, and she had not received her test results. Later that day, on February 9, 2021, she received a voicemail from a

representative of her employer that her employment was terminated because she did not successfully complete her probationary period.

Whitebread filed a dual charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") asserting her claims under the ADA and the Pennsylvania Human Relations Act ("PHRA") on August 7, 2021. The EEOC issued a dismissal and notice of rights letter to Whitebread on November 8, 2021. The complaint in this court was thereafter timely filed. The County defendants filed their motion to dismiss on March 28, 2022. (Doc. 9). In their motion, the County defendants argue that Whitebread's claims fail because she has not plausibly pled that she is a qualified individual with a disability or that she was associated with an individual with a disability under the ADA or the RA. Also, they contend that the defendant, Luzerne County Correctional Facility, is not a separate and distinct entity from the defendant, Luzerne County. The parties have briefed the motion, and it is ripe for disposition. (Doc. 10; Doc. 13; Doc. 14).

## II. Legal Standard

Rule 12 (b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief is granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen, Inc.,* 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). In deciding the motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellab, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski,* 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevy*, 481 F.3d 187, 195 (3d Cir. 2007). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which

the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588-89 (W.D. Pa. 2008).

### III.     *Discussion*

The complaint is comprised of four Counts.  In Counts One and Two, Whitebread asserts claims under the ADA for discrimination and associational discrimination.  In Counts Three and Four, she asserts parallel claims based upon § 504 of the RA for discrimination and associational discrimination.

The defendants argue that the ADA and the RA claims in Counts One through Four should be dismissed because the plaintiff has not plausibly pled that she is a qualified individual with a disability or that she was associated with an individual with a disability under the ADA or the RA.

#### *The RA and ADA Claims*

Title II of the ADA states that: "no qualified individual with a disability shall by reason of such disability be excluded from participation

in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Claims under the ADA and the RA are generally subject to the same substantive standard. *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 260 (3d Cir. 2013); *Hewlette-Bullard ex rel. J.H-B. v. Pocono Mountain Sch. Dist.,* 522 F. Supp. 3d 78, 103 (M.D. Pa. 2021). To establish a *prima facie* case of disability discrimination under the ADA or RA, a plaintiff must demonstrate "(1) that [s]he is disabled within the meaning of the ADA, (2) that [s]he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that [s]he was subjected to an adverse employment decision as a result of discrimination." *Showers v. Endoscopy Ctr. of Cent. Pa., LLC*, 58 F. Supp. 3d 446, 460 (M.D. Pa. 2014) (citing *Sulima v. Tobyhanna Army Depot,* 602 F.3d 177, 185 (3d Cir. 2010)); *see also*; *Chambers v. Sch. Dist. of Philadelphia Bd.*

6

*of Educ.* 587 F. 3d 176, 189 (3d Cir. 2009). Although claims under the RA and the ADA are otherwise generally the same, the causation elements of the RA and the ADA differ in that the "RA allows a plaintiff to recover if he or she were deprived of an opportunity to participate in a program *solely* on the basis of disability, while the ADA covers discrimination on the basis of disability, even if there is another cause as well." *CG v. Pa. Dep't. of Educ.,* 734 F.3d 229, 235-36 (3d Cir. 2013) (emphasis added). Both statutes require plaintiffs to prove "that they were treated differently based on the protected characteristic, namely the existence of their disability." *Id.* at 236.

The ADA defines a "disability" as "[1] a physical or mental impairment that substantially limits one or more major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." 42 U.S.C. § 12102(1). A plaintiff is disabled within the meaning of the ADA only if she had a disability at the time of the adverse employment decision. *Rahsman v. Dewberry–Goodkind, Inc.,* No. 1:05–CV–1931, 2007 WL 188571, at *6 (M.D. Pa. Jan. 22, 2007).

To obtain compensatory monetary damages under § 504 of the RA and the ADA, however, the Third Circuit requires a plaintiff to prove intentional discrimination. *S.H.* 729 F.3d at 261. The Third Circuit has also held that "a showing of deliberate indifference may satisfy a claim for compensatory damages under § 504 of the RA and . . . the ADA. *S.H.* 729 F.3d at 263.

> To satisfy the deliberate indifference standard, a plaintiff must present evidence that shows both: (1) knowledge that a federally protected right is substantially likely to be violated . . ., and (2) failure to act despite that knowledge. Deliberate indifference does not require a showing of personal ill will or animosity toward the disabled person. It does, however, require a deliberate choice, rather than negligence or bureaucratic inaction.

*D.E. v. Cent. Dauphin Sch. Dist.,* 765 F.3d 260, 269 (3d Cir. 2014) (citations and internal quotation marks omitted).

The defendants contend that the plaintiff failed to allege that she was a qualified individual with a disability and/or that she was associated with an individual with a disability because possible exposure to COVID-19 is not an impairment that substantially limits one or more major life activities. (Doc. 10, at 8). In support of this argument, the defendants rely upon *Parker v. Cenlar FSB*, Civil Action No. 20-02175, 2021 WL 22828, at *6 (E.D. Pa. Jan. 4, 2021) (finding *possible exposure*

to COVID-19 is not a physical or mental impairment that substantially limits one or more major life activities under 42 U.S.C. § 12102(2)(A)). Whitebread contends that *Parker* is inapposite because she reported much more than "possible exposure" to COVID-19 to the defendants. (Doc. 13, at 4). Whitebread directs us to the complaint where she alleged that: (1) she informed the defendants that she might have COVID-19 because she was exposed to her stepson who was exposed to COVID-19; (2) she was tested for COVID-19; (3) she called off work the following day while she awaited the results of the test; (4) she was terminated from employment before she received the test results. (Doc. 13, at 4; Doc. 1 ¶¶14-15, 17, 19-22).

Further, in the complaint, Whitebread alleged that she was a qualified employee under the ADA and that the defendants regarded her as an individual with a disability because of her exposure to and testing for COVID-19. (Doc. 1 ¶¶25-27, 48). With respect to the RA claims, she alleged that the defendants receive federal financial assistance, and they violated her rights under the Act.

Whitebread further argues that another case, *Matias v. Terrapin House, Inc.*, No. 5:21-cv-02288, 2021 WL 4206759 (E.D. Pa. Sept. 16,

9

2021), is "directly on point." (Doc. 13, at 5). We disagree. In *Matias*, the plaintiff alleged in an amended complaint that she was terminated from her employment *after* she tested positive for COVID-19. Three days before she tested positive, she informed her employer that she felt ill. Upon inquiry from her employer regarding the nature of her symptoms, the plaintiff said she was losing her sense of taste and smell. *Id*. at *4. There, the court held that the immediate temporal proximity between the plaintiff's disclosure of her COVID-19 symptoms and her positive test result and her termination raised a strong inference that her employer regarded her as disabled. Also, in *Matias*, the court held that certain forms of COVID-19 that carry longer-term impairment of major life functions *can* qualify as a disability. *Id*. Unlike *Matias*, in this case Whitebread did not allege the nature of her symptoms, that the symptoms limited any major life activities, that she had any limitation that went beyond being transitory and minor, the length of time that she experienced these symptoms, or the results of her COVID-19 test. Further, Whitebread failed to allege the nature of her stepson's symptoms and whether he actually tested positive for COVID-19.

In December 2021, the EEOC released guidance about when COVID-19 can constitute a disability under the ADA. *See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* ("EEOC Guidance"), U.S. EEOC (Dec. 14, 2021), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (last updated July 12, 2022). The EEOC Guidance notes that COVID-19 may be a disability, but it is not always a disability. *Id.* at A5. Whether COVID-19 is an actual disability under the ADA requires a "case-by-case determination." *Id.* at N2. Further, according to the EEOC, an individual who is asymptomatic or who has mild symptoms will not have a disability within the meaning of the ADA. *Id.* However, "a person with COVID-19 has an actual disability if the person's medical condition . . . substantially limits one or more major life activities." *Id.* (alterations omitted).

While not binding on the Court, "this guidance is helpful in deciding the issue of whether COVID-19 can be a disability; and it guides that COVID-19 can be a disability, so long as the condition is sufficiently severe to impair major life activities." *Brown v. Roanoke Rehab. & Healthcare Ctr.*, Case No. 21-cv-00590-RAH, 2022 WL 532936, at *3

11

(M.D. Ala. Feb. 22, 2022) (analyzing an ADA COVID-19 disability claim based on regulatory guidance). However, the common theme in this regulatory guidance is that COVID-19 may be a disability when it is long-term—lasting for months—but not when it is acute. *See*, U.S. Dep't of Health & Human & U.S. Dep't of Justice, *Guidance on "Long COVID" as a Disability Under the ADA, Section 504, and Section 1557* ("Joint Guidance") (July 26, 2021), https://archieve.ada.gov/long-covid-joint-guidance.pdf. EEOC Guidance, at N4. The Joint Guidance refers to individuals with "Long COVID," who experience symptoms "months after first being infected, or may have new or recurring symptoms at a later time." Joint Guidance, at 1. The EEOC Guidance also refers to individuals who experience symptoms lasting for months. EEOC Guidance, at N4.

The complaint is devoid of these factual allegations to enable us to determine whether Whitebread had, in fact, tested positive for the virus, the nature of her symptoms before her test, whether her stepson in fact tested positive for COVID-19 or the nature and length of his symptoms.

Finally, we conclude that *Payne v. Woods Services*, 520 F. Supp. 3d 670, 679 (E.D. Pa. 2021), is instructive. There, the court held that mere

infection with COVID-19 infection,[1] without noting symptoms or limitations stemming from the infection, does *not* qualify as an impairment under the ADA.

Accordingly, the plaintiff's claims against the defendants will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. It is not necessary for us to address the other issue regarding the defendant's contention that the defendant Luzerne County Correctional Facility should be dismissed because it is not a separate and distinct entity from defendant Luzerne County.

## IV.    LEAVE TO AMEND

The Third Circuit has instructed that, if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile, *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir.

---

[1]    In the case before us, the complaint does not allege an actual COVID-19 *infection*.

2004). In her brief, the plaintiff has requested leave to amend if claims are dismissed, and it does not appear to us that amendment would be futile or inequitable. Therefore, the complaint will be dismissed with leave to amend.

An appropriate order follows.

***Joseph F. Saporito, Jr.***
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

Dated: January 20, 2023